LEIGH M. CLARK, Retired Circuit Judge.
All of the issues raised by appellant on the original submission were fully considered. It was thought that no opinion was necessary. In appellant’s application for rehearing, he raises no substantially different issues, but in view of all the circumstances, including an opportunity for a full review by the Supreme Court of Alabama of what we hold, this opinion is written.
*311 A jury found appellant guilty of an assault with intent to murder Arkamae Regina Grimmett. The court sentenced him to imprisonment for five years.
The alleged victim testified that while she was working at Republic Steel on the 11:00 p. m. to 7:00 a. m. shift, defendant phoned her and told her that he had left some money for her in another building of the plant; she went to that building and while there she was caught by defendant and badly injured. She said:
“He pushed me over to a big old coil of steel and he started beating me up against it. And at the time he was beating me he said, ‘You are going to tell me how long you have been-around with that nigger.’ ”
There was strong corroborating testimony as to the severity of her injuries to her head and other portions of her body. A large amount of blood was found at the scene. She was hospitalized for seven days; sixty-nine stitches were taken on her head.
The victim testified at length about her relationship with defendant. She had been living with him off and on for a long time, but had recently caught him in bed with another woman. He in turn had claimed that she was fornicating with another man.
The appointed attorney on appeal was not defendant’s attorney on the trial. He makes four contentions on appeal.
1. He challenges the sufficiency of the evidence to show an assault with intent to murder, arguing that the unusual method employed by defendant to commit a battery upon the victim does not show an assault with intent to murder. It was unusual in that it appears that instead of using a hard object as a weapon against the head, he used the head as a battering ram against the hard object. This presented no danger to the anvil, but it defies reason to say that he could not have thereby killed the victim.
2. Appellant complains of references in the argument of State’s counsel to the jury to a 2 X 4 board that was found near the scene with blood on it. The State offered the board in evidence, contending that, even though the victim did not testify that defendant used the board, it presented some evidence that he did use it on the head of the victim. The court sustained defendant’s objection. This occurred in the presence of the jury, and the jury observed the exhibition of the board. During the argument of counsel, at the conclusion of the evidence, in which the only evidence presented on behalf of defendant was that of a witness in the nature of alibi testimony, counsel for the State argued:
“Well, if he wasn’t there why is there so much concern about what happened to this lady and a board up side of the head? Think about that for a minute.”
Defendant promptly objected to the argument and moved for a mistrial. It appears that the court attempted to handle the question out of the hearing of the jury but that the argument was so loud that the jury probably heard some of it. In ruling on the matter, the court said:
“I understand. The board is not in evidence. The board would not be referred to other than at the scene of the crime and the possibility of it being a weapon or anything like that, that is not to be argued.”
No further reference to the board is to be found. The court was correct in its ruling in not permitting the board to be introduced in evidence for the purpose stated by the State. The argument of counsel for the State was not only illogical but also, in the belief of the writer, would probably have been rejected by the jury. There was no specific ruling by the court adverse to defendant on the point. It is believed that defendant was not injured in any way by the State’s attempt to argue that there was evidence that defendant hit the victim over the head with the board.
3. The third contention of appellant is as to the State’s effort to impeach the only witness for the defendant. Her testimony was in support of his claim of an alibi, she saying that he was with her at or about the time of the alleged crime. She was cross-examined rather extensively as *312 to whether she was convicted in Etowah County on a charge of second degree forgery. The effect of her answers was that she didn’t remember, she didn’t know or that she wasn’t sure. After she left the witness stand, the State offered in evidence a certified copy of the bench notes signed by the circuit judge then presiding showing that in 1971 a person by the same name of the witness had pleaded guilty to forgery in the second degree and sentenced to two years in the state penitentiary and that she had been granted probation. As soon as the offer of the certified copy of the bench notes was made, defendant’s counsel said, “I don’t know whether that’s one and the same.” The court then said, “I will allow it.” Counsel for defendant then stated, “Note our exception.” Appellant relies largely upon Highsmith v. State, 55 Ala.App. 272, 314 So.2d 874, 876 (1975), wherein it is stated:
“The proper method of proving the prior conviction is not through the testimony of the circuit clerk, but rather by a certified copy of the minute entry showing the . prior conviction. Childers v. Holmes, 207 Ala. 382, 92 So. 615; Thompson v. State, 100 Ala. 70, 14 So. 878; Palmer v. State, 1975, 54 Ala.App. 707, 312 So.2d 399.”
Appellant relies also upon what was stated in Napier v. State,[1] Ala.Cr.App., 344 So.2d 1235, 1238 (1977), as follows:
“A former conviction of a person for an offense against the law may be proven by a certified copy of the judgment of the former conviction and, when necessary, a certified copy of the indictment or complaint in the former case, and proof that the person on trial and the person named in the certified judgment is one and the same person, or by the admission of the defendant. ...”
There was no general objection by defendant to the particular evidence offered. If his counsel’s statement, “I don’t know whether that’s one and the same,” constitutes an objection, it does not challenge the method by which counsel for the State was endeavoring to prove the prior conviction; it is limited to the ground that it does not show that “the person on trial and the person named in the certified judgment is one and the same person,” and it is vague and obscure as to any such ground. Even if it were sufficient to raise the point that the document does not show that the witness sought to be impeached was the same person as the defendant with the same name that had been convicted of forgery in the second degree, there is little likelihood, perhaps the remotest possibility only, that she was not. Her name is not one often heard; it is precisely the same as the name of the defendant in the forgery case. In cross-examining the witness as to her identity and as to whether she had been convicted of the forgery, the following occurred:
“Q. Did you not plead guilty of the charge in May of 1971, sentence of two years?
“A. No, I hadn’t-I hadn’t served no sentence or nothing else.
“Q. Ma’am?
“A. I hadn’t served no sentence, 2 years or nothing else.
“Q. I didn’t ask you if you had served any sentence. Let me ask you this. Was your address 615 North 8 Street-
“A. That’s where I was raised, yes.
“Q. -Gadsden, Alabama? Was your sister Cynthia?
“A. Right.
“Q. Were you 17 years old in 1971?
' “A. I guess.
“Q. Were you or were you not? Did you not plead guilty to a charge of forgery, second degree?
“A. I don’t remember. Like I said, the man said it was my sister and he said he saw a pregnant woman [she had testified that she was pregnant then] with her, but as far as anything else, I don’t remember.”
The trial docket sheet as to the forgery conviction was signed by a judge of the *313 Circuit Court of Etowah County, who retired about five years after the entry. The trial judge in the instant case became a circuit judge soon after the other judge’s retirement and was a long time resident and attorney in Etowah County. In our opinion, it cannot be correctly said that there was substantial injury to defendant in the admission in evidence of the certified copy of the trial docket sheet or bench notes in the forgery case.
4. The fourth contention of appellant is to the effect that “minimal constitutional standards for jury instruction in a criminal case” were not observed by the trial court in its oral charge. He seems to contend that the court did not sufficiently charge the jury as to the meaning of the crime of an assault with intent to murder. The court said, inter alia :
“As defined, an assault with intent to murder is an assault committed unlawfully, wilfully and maliciously and with the intent to take the life of the party assaulted. Now, unlawful means without a legal excuse or justification. Wilful means that the defendant must have been governed by his will as contradistin-guished from a sudden or rash act. And malice is the mental state or condition of one’s mind which prompts him to do an unlawful act without legal excuse or justification.”
The court also instructed the jury as to the lesser included offense of an assault and battery and gave the jury written forms of verdict as to both offenses, as well as to a finding of not guilty. No exception was taken to the court’s oral charge. No charges in writing were requested by defendant. The fourth contention of appellant is without substantial merit.
In his application for rehearing, appellant “submits,” pursuant to Rule 39(k), Alabama Rules of Appellate Procedure, under the caption ADDITIONAL STATEMENT OF FACTS, the following:
“The victim alleged that Defendant assaulted her with intent to murder. In support of her allegation she made two statements concerning the assault and battery:
“(1) ‘He pushed me over to a big old coil of steel and he started beating me up against it.’ (TR-14)
“(2) ‘He started beating me. He had both of my arms like this. And he started beating my head up against it.’ (TR-15)
“There was no evidence that a weapon had been used. There was no evidence regarding the severity of the beating. There were no verbal threats. There is no other evidence which would create an inference that the victim’s death was intended.
“When Defendant presented an alibi witness, the State introduced into evidence, over objection, a ‘trial docket sheet’ for the purpose of showing that said witness had been convicted of Forgery in the Second Degree. (TR-126)
“During the State’s presentation of evidence, the State offered a 2" X 4" board as evidence (TR 40-43). The State thought the board was the weapon used in the assault and battery. The board was excluded from evidence. (TR 41-43). The closing argument the Prosecutor told the jury:
“ ‘Well, if he wasn’t there why is there so much concern about what happened to this lady and a board up side of the head? Think about that for a minute.’ (TR-129).
“Defendant’s motion for mistrial was ignored.”
Appellant requests in his application for rehearing that this Court “add to or correct” his additional statement of facts “in its opinion on rehearing.” The foregoing part of the opinion does so to some extent. It continues to do so hereinafter with reference specifically to appellant’s “additional statement.”
The two quotations in appellant’s “additional statement” as to what the victim testified is correct. We now give each quotation in its context:
“Q. What happened then?
“A. He pushed me over to a big old coil of steel and he started beating me up *314 against it. And at the time he was beating me he said, ‘You’re going to tell me how long you have been f. . .ing around with that nigger.’
“Q. I want you to step back down here now and draw the coils of steel.

“Q. And what happened then?
“A. He started beating me. He had both of my arms like this. And he started beating my head up against there. And he told me I was going to tell him how long I had been f... ing around with that nigger.
“Q. What happened then?
“A. That’s the last I remember. I went out.
“Q. What’s the next thing you remember?
“A. Waking up in the hospital.”
Appellant is correct in his statement that there “was no evidence that a weapon had been used” and in his statement that there “were no verbal threats.” He is incorrect in his statement that there “was no evidence regarding the severity of the beating” and that there was “no other evidence which would create an inference that the victims[m’s] death was intended.”
The next two paragraphs of the application under the caption ADDITIONAL STATEMENT OF FACTS are correct. If by the last statement under said caption, “Defendant’s motion for mistrial was ignored,” appellant means that the court did not expressly rule upon the motion for a mistrial, he is correct.
We have searched the record for error prejudicial to defendant and have found none. The judgment rendered on original submission affirming the judgment of the trial court should stand and appellant’s application for rehearing should be overruled.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
OPINION ISSUED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.

. By Supplemental brief he relies also upon Hope v. State, Ala.Cr.App., 381 So.2d 676 (1980).